IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In the Matter of:

Megan Swenson,

(Chapter 7)

Debtor.

Case No. 16-10016

---

STEWART SWENSON,

        Plaintiff,

v.

Adv. No. 16-00022

MEGAN SWENSON,

        Defendant.

---

MEMORANDUM DECISION

---

Stewart Swenson sued to have his claim against his daughter, Megan, held to be non-dischargeable. Between 2005 and 2009, Megan and Stewart co-signed student loans to pay for Megan's expenses at Clarke College (the "Original Loan").[1] On or around December 23, 2009, they also entered into a home equity credit agreement with Woodford State Bank in the amount of $45,000 (the "Home Loan"). Some of the proceeds of that loan were used to refinance the Original Loan. Megan concedes that there was a verbal agreement under which she was to repay money applied for her benefit (the "Repayment Loan"). The Home Loan included three attachments: one signed by Stewart Swenson declaring the loan to be for a marital purpose, a second signed by his spouse Teresa

---

[1] The record is unclear whether Stewart is officially characterized as a "co-signor" or a "guarantor."

1

Swenson stating that the loan was for college expenses for Megan Swenson and a third signed by Megan Swenson declaring the purpose of the loan to be for her college expenses. In 2011, Stewart and Teresa Swenson were divorced. In 2013, Stewart and Megan signed a new Home Loan, releasing Teresa from the previous Home Loan. After Megan stopped paying him, Stewart sued her to collect. That case was dismissed after Megan filed this bankruptcy. Thereafter, Stewart repaid the Home Loan in full when he refinanced his property.

Stewart argues that the Repayment Loan is a student loan and is non-dischargeable under 11 U.S.C. § 523(a)(8). Megan argues that the Repayment Loan was not for educational purposes, but instead "to refinance debt of the Debtor to reduce the Debtor's monthly payment, while also permitting the Plaintiff to receive tax deductions for interest paid on the debt."

11 U.S.C. § 523(a)(8) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
    (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for-

        (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

        (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

        (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual

11 U.S.C. § 523 (2010). 26 U.S.C. § 221(d)(1) states:

2

> (1) Qualified education loan. The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses-
>> (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
>> (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
>> (C) which are attributable to education furnished during a period which the recipient was an eligible student.
>
> Such term includes indebtedness used to refinance indebtedness which qualifies as a qualified education loan. *The term "qualified education loan" shall not include any indebtedness owed to a person who is related (within the meaning of section 267(b) or 707(b)(1) to the taxpayer* or to any person by reason of a loan under any qualified employer plan (as defined in section 72(p)(4)) or under any contract referred to in section 72(p)(5).

26 U.S.C. § 221 (2014) (emphasis added). It has long been established that the party wishing to fit within an exception to discharge bears the burden of proof by a preponderance of the evidence. *Hill v. Smith*, 260 U.S. 592, 595 (1923); *see also In re Taylor*, 191 B.R. 760, 763-64 (Bankr. N.D. Ill. 1996).

When a loan is made by a private party, the lender typically relies on 11 U.S.C. § 523(a)(8)(A)(ii) to argue for the non-dischargeability of the debt. The addition of § 523(a)(8)(A)(ii) eliminated any consideration of the nature of the lender. *See In re Corbin*, 506 B.R. 287, 296-97 (Bankr. W.D. Wash. 2014) ("Section 523(a)(8) was amended in 2005 by Congress to make a broader range of student loan debt nondischargeable, regardless of the nature of the lender.").

In *In re Decena*, one court resolved the apparent tension between the plan meaning of 11 U.S.C. § 523(a)(8)(A)(ii) and the legislative history:

> In 2005, Congress created a clear distinction between an "education benefit overpayment or loan" and an "obligation to repay funds received" when it separated those concepts into separate subparagraphs of section 523(a)(8)(A). In doing so, Congress indicated an intention to give each subsection a distinct function and to target different kinds of educational debt. *See Russello v. United States*, 464 U.S.

> 16, 23 (1983) (applying the familiar canon of *expression unius est exclusion alterius*). Moreover, by including "educational benefit" in section 523(a)(8)(A)(ii)'s list, Congress indicated an intention to give "educational benefit" a meaning similar to "scholarship" and "stipend." *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995) (applying the familiar canon of *noscitur a sociis* under which each word in a statute's list presumptively has a "similar" meaning.) Unlike loans, "scholarships" and "stipends" are conditional educational grants, which are not generally required to be repaid. *Campbell v. Citibank, N.A.*, 547 B.R. 49, 55 (Bankr. E.D. N.Y. 2016) (Judge Craig). It follows that "educational benefit" does not encompass loans. *Id*.

*In re Decena*, 549 B.R. 11, 18-19 (Bankr. E.D.N.Y. 2016). The court acknowledged the line of cases that include loans within the operation of § 523(a)(8)(A)(ii), but refused to do so:

> There is a line of cases holding that any education-related debt, including those emanating from "loans," qualifies as an "educational benefit" under section 523(a)(8)(A)(ii). However, by focusing solely on the stated *educational purpose* giving rise to the debt-rather than the manner in which the debt arose-to qualify the debt under subsection 523(a)(8)(A)(ii), these cases effectively find that subsection 523(a)(8)(A)(i) is subsumed by subsection 523(a)(8)(A)(ii). Such as interpretation also results in subsection 523(a)(8)(B) being subsumed by subsection 523(a)(8)(A)(ii), and renders subsection 523(a)(8)(B) superfluous. It defies logic to suggest that Congress added subsection 523(a)(8)(B) in 2005 to encompass a subset of loans already covered under subsection 523(a)(8)(A)(ii). The Court finds that section 523(a)(8)(A)(ii) is not a "catch-all" provision designed to encompass any educational claim arising out of any transaction that bestows an educational benefit on a debtor.

*Id*. at 19-20 (citations omitted); *see also In re Christoff*, 527 B.R. 624, 634 (B.A.P. 9th Cir. 2015) ("Meridian's arguments conflating 'loan' as used in § 523(a)(8)(A)(i) and (a)(8)(B), and as interpreted by *McKay* and *In re Johnson* with 'an obligation repay funds received' as provided in § 523(a)(8)(A)(ii), are unconvincing."). *Decena*'s reasoning which upholds the statutory interpretation canons of *expression unius est exclusion alterius* and *noscitur a sociis* is compelling. To interpret 11 U.S.C. § 523(a)(8)(A)(ii) to include loans would

4

entirely subsume the operation of 11 U.S.C. § 523(a)(8)(A)(i) and 11 U.S.C. § 523(a)(8)(B) and ignores the distinct diction chosen by Congress.

Additionally, even under a broad reading of 11 U.S.C. § 523(a)(8)(A)(ii), the Repayment Loan did not occur at the right time. In discussing whether the repayment of student loans itself provides an educational benefit, the Third Circuit stated:

> Santa Fe's principal contention focusses [sic] on the 1990 amendment to section 523(a)(8), which rendered non-dischargeable an "obligation to repay funds received as an educational benefit, scholarship, or stipend." Implicit in Santa Fe's argument is the assumption that any lender-commercial or nonprofit-which provides funds which, in turn, are used to repay an educational loan obligation, *a fortiori*, has provided "funds received as an educational benefit. . . ." This argument must fail, however, because as we have already noted, the only educational benefits or stipends provided to Dr. Crowe were provided by the NHSC and not by Santa Fe.

*In re Segal*, 57 F.3d 342, 348 (3rd Cir. 1995). Here, the temporal relationship between the Repayment Loan and obtaining educational benefits precludes a finding that the Repayment Loan provided Megan education benefits. Megan's education was already complete when the loan was made; payment or non-payment of Megan's old student loans would have no effect on the educational benefits she already received.

Ultimately, Stewart cannot rely on § 523(a)(8)(A)(ii) because including loans within the provision renders the remainder of the subsection superfluous. Stewart clearly cannot rely on § 523(a)(8)(A)(i) (because he is an individual) or § 523(a)(8)(B) (because he is related to Megan) and, therefore, the nature of the Repayment Loan renders it dischargeable.

But, could Stewart gain what he seeks by subrogation? In this Court, equitable subordination is defined as follows:

5

In Wisconsin,
> Subrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another. As a rule, however: . . . the right of a party to subrogation, by reason of advances made to a debtor, depends upon (1) his being secondarily liable; or (2) the necessity for acting to protect his own interests; or (3) an agreement that he is to have security.

*In re Crawley*, 318 B.R. 512, 514-15 (Bankr. W.D. Wis. 2004) (*quoting Rock River Lumber Corp. v. Universal Mortg. Corp. of Wisconsin*, 262 N.W.2d 114, 116-17 (Wis. 1978). If a party is allowed to subrogate her claim to a nondischargeable claim, the subrogated claim itself can become nondischargeable "if the facts and circumstances of the case warrant such relief." *In re Lakemaker*, 241 B.R. 577, 582 (Bankr. N.D. Ill. 1999 (*citing Cooper v. Cooper*, 83 B.R. 544 (Bankr. C.D. Ill. 1988) (citations omitted). In the context of nondischargeability and student loans, *In re Posner* stated:

> . . . based on the Bankruptcy Code and the relevant case law, that, as a third party who paid off Defendant's student loan debt, Plaintiff is an unsecured creditor and not entitled to the protections afforded by 11 U.S.C. § 523(a)(8). The Court has found no authority to support the proposition that a co-borrower who pays an obligation it contractually owes under the terms of a student loan note is entitled to be subrogated to the rights of the party receiving payment.

*In re Posner*, 434 B.R. 800, 806 (Bankr. E.D. Mich. 2010).

That analysis is apt. The circumstances do not compel subrogation under equity. Because the original loan was not entitled to nondischargeability under 11 U.S.C. § 523(a)(8)(A)(ii), that provision cannot offer relief to the subrogee.

Dated: August 22, 2016

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE